IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**IN RE PETITION FOR WRIT OF MANDAMUS OF PUBLIC BROADCASTING OF COLORADO, INC.,** *d/b/a* **COLORADO PUBLIC RADIO**

Case No. _____

Related Cases:
No. 25-SW-0017-NRN
Unknown Case Number(s)

**MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR WRIT OF MANDAMUS COMPELLING UNSEALING OF JUDICIAL RECORDS IN CERTAIN SEALED WARRANT CASES OR, IN THE ALTERNATIVE,
<u>MOTION TO INTERVENE AND UNSEAL</u>**

Rachael Johnson
REPORTERS COMMITTEE FOR
 FREEDOM OF THE PRESS
c/o Colorado News Collaborative
2101 Arapahoe Street
Denver, CO 80205
Telephone: 970-486-1085
Facsimile: 202-795-9310
rjohnson@rcfp.org

*Counsel for Public Broadcasting of Colorado, Inc.,* d/b/a *Colorado Public Radio*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ iii

INTRODUCTION ................................................................................................................................ 1

JURISDICTION .................................................................................................................................... 2

STATEMENT OF FACTS ................................................................................................................... 3

ARGUMENT ......................................................................................................................................... 6

    I.     Local Criminal Rule 47.1 requires release of the Warrant Materials. ............................... 6

    II.    The Warrant Materials are judicial records presumptively open to the public under common law .................................................................................................................. 7

    III.   No countervailing interests overcome the common law right of access to the Warrant Materials. ............................................................................................................... 9

CONCLUSION ..................................................................................................................................... 12

## TABLE OF AUTHORITIES

**Cases**

*Balt. Sun Co. v. Goetz*,
  886 F.2d 60 (4th Cir. 1989) .............................................................................................. 8, 9

*Daines v. Harrison*,
  838 F. Supp. 1406 (D. Colo. 1993) ...................................................................................... 3

*Globe Newspaper Co. v. Superior Court*,
  457 U.S. 596 (1982) ............................................................................................................ 2

*Hartford Courant Co. v. Pellegrino*,
  380 F.3d 83 (2d Cir. 2004) .................................................................................................. 9

*In re N.Y. Times Co.*,
  585 F. Supp. 2d 83 (D.D.C. 2008) ................................................................................. 9, 11

*In re Demetriades*,
  58 F.4th 37 (2d Cir. 2023) ................................................................................................... 7

*In re EyeCare Physicians of Am.*,
  100 F.3d 514 (7th Cir. 1996) ............................................................................................... 8

*In re L.A. Times Commc'ns LLC*,
  28 F.4th 292 (D.C. Cir. 2022) ............................................................................................. 8

*In re Newsday, Inc.*,
  895 F.2d 74 (2d Cir. 1990) .................................................................................................. 8

*In re Search of 1638 E. 2nd St.*,
  993 F.2d 773 (10th Cir. 1993) ......................................................................................... 1, 8

*In re Search Warrant for Secretarial Area Outside Office of Gunn*,
  855 F.2d 569 (8th Cir. 1988) ........................................................................................... 8, 9

*J. Publ'g Co. v. Mechem*,
  801 F.2d 1233 (10th Cir. 1986) ........................................................................................... 3

*Kamakana v. City & Cnty. of Honolulu*,
  447 F.3d 1172 (9th Cir. 2006) ........................................................................................... 10

*Keymark Enters., LLC v. V.P.T., Inc.*,
  No. 08-cv-00662, 2008 WL 1801186 (D. Colo. Apr. 18, 2008) ......................................... 7

*Nixon v. Warner Commc'ns, Inc.*,
  435 U.S. 589 (1978) ............................................................................................................ 7

*United Nuclear Corp. v. Cranford Ins. Co.*,
   905 F.2d 1424 (10th Cir. 1990) ............................................................................................ 3

*United States v. Bus. of Custer Battlefield Museum & Store*,
   658 F.3d 1188 (9th Cir. 2011) ..........................................................................................8, 11

*United States v. Gonzales*,
   150 F.3d 1246 (10th Cir. 1998) ............................................................................................ 9

*United States v. Hickey*,
   767 F.2d 705 (10th Cir. 1985) .............................................................................................. 8

*United States v. McVeigh*,
   119 F.3d 806 (10th Cir. 1997) ........................................................................................ 3, 9

*United States v. Mendoza*,
   698 F.3d 1303 (10th Cir. 2012) ............................................................................................ 9

*United States v. Pickard*,
   733 F.3d 1297 (10th Cir. 2013) ............................................................................. 2, 7, 9, 10

*United States v. Sealed Search Warrants*,
   868 F.3d 385 (5th Cir. 2017) ................................................................................................ 8

**Statutes**

18 U.S.C. § 751 ............................................................................................................................ 11

28 U.S.C. § 1361 ............................................................................................................................ 3

8 U.S.C. § 1227 ............................................................................................................................ 11

8 U.S.C. § 1325 ............................................................................................................................ 11

8 U.S.C. § 1326 ............................................................................................................................ 12

**Other Authorities**

@DEARockyMtnDiv, X (Feb. 5, 2025, 9:04 A.M.),
   https://perma.cc/SXJ7-94EX ................................................................................................ 5

@DEARockyMtnDiv, X (Jan. 26, 2025, 10:36 A.M.),
   https://perma.cc/NC7X-JQKA ............................................................................................. 4

@ERODenver, X (Feb. 5, 2025, 11:15 A.M.),
   https://perma.cc/QTC4-UAPV ............................................................................................. 5

Allison Sherry & Ben Markus, *Immigration raids in Colorado, both highly visible and cloaked in secrecy, rattle advocates and local authorities*,
CPR News (Feb. 6, 2025),
https://perma.cc/XWA7-A3NK ................................................................................. 4, 5, 10, 11

Allison Sherry, *Colorado military officials prepare for a massive immigration raid in Aurora – but crackdowns may already be underway across metro are*a,
CPR News (Jan. 28, 2025),
https://perma.cc/P88H-B3JK ................................................................................................ 2

D.C. Colo. LCrR 47.1 ............................................................................................................ 1, 6, 7

Fed. R. Crim. P. 41 ..................................................................................................................... 6

Kevin Beaty & Kyle Harris, *ICE and federal agents raid multiple metro Denver apartments early Wednesday*, Denverite (Feb. 5, 2025),
https://perma.cc/W3F4-J6XA ......................................................................................... 4, 5, 12

Kevin Beaty, *What we saw from inside ICE's raid at Aurora's Edge apartments*,
Denverite (Feb. 6, 2025),
https://perma.cc/ASW7-Z9F5 ................................................................................................ 5

Marissa Solomon et al., *DEA says Adams County raid likely won't result in drug charges*,
9News (Jan. 27, 2025),
https://perma.cc/78FA-6RR8 .............................................................................................. 4, 10

Molly Cruse, *Alleged Tren de Aragua members among 49 arrested in DEA raid*,
Denverite (Jan. 27, 2025),
https://perma.cc/R9KD-5NCE ............................................................................................. 3, 4

Press Release, *DEA Rocky Mountain Field Division Executes Search Warrant on Known Tren de Aragua Gang Location in Metro Denver*, Drug Enf't Admin. (Jan. 26, 2025),
https://perma.cc/8XCG-BSG3 ................................................................................................ 4

*United States v. Castillo-Pina*,
No. 1:25-mj-00015 (D. Colo. Jan. 27, 2025), ECF Nos. 1–1-1 ............................................... 11

## INTRODUCTION

Public Broadcasting of Colorado, Inc., *d/b/a* Colorado Public Radio ("CPR") respectfully submits this Memorandum of Law in Support of its Petition for Writ of Mandamus Compelling Unsealing of Judicial Records in Certain Sealed Warrant Cases or, in the Alternative, Motion to Intervene and Unseal (hereinafter the "Petition"). By its Petition, CPR seeks an order directing the Clerk of Court to unseal the docket and judicial records relating to search and/or arrest warrants executed on or around January 26, 2025 at the 6600 block of Federal Boulevard, Denver, CO 80221; and on or around February 5, 2025 at 1218 Dallas St., Aurora, CO 80010, and 840 S. Oneida St., Denver, CO 80224 (collectively, the "Warrant Materials"). Alternatively, CPR moves to intervene for the limited purpose of seeking an order unsealing the Warrant Materials.

CPR is entitled to the relief it seeks for either of two reasons. First, Local Criminal Rule 47.1 creates a presumptive right of access to "all cases and documents filed with the court and all court proceedings." D.C. Colo. LCrR 47.1 (hereinafter "Local Rule 47.1"). Although **unexecuted** warrant materials are subject to a temporary restriction on public access, that restriction ordinarily expires upon execution of a warrant. *Id.* LCrR 47.1(g). Because the warrants at issue here have been executed, and CPR is not aware of any motion to restrict or order sealing the Warrant Materials, this Court may direct the Clerk to unseal the relevant dockets and filings associated with them.

Second, even if a party has requested that the Warrant Materials remain under seal beyond what Local Rule 47.1 contemplates, continued sealing would violate the common law right of access to judicial records. The Tenth Circuit has recognized that members of the public and the press have a qualified common law right to inspect judicial records, including warrant materials. *In re Search of 1638 E. 2nd St.*, 993 F.2d 773, 775 (10th Cir. 1993) (search warrant affidavit is

1

judicial record subject to qualified common law right of access).  Here, CPR—and the public at large—has a particularly powerful interest in access to the Warrant Materials at issue.  The U.S. Immigration and Customs Enforcement (ICE) raids in Colorado come following the Trump Administration's mass deportation effort called "Operation Aurora" initiated as part of its policy on immigration reform.  *See* Allison Sherry, *Colorado military officials prepare for a massive immigration raid in Aurora – but crackdowns may already be underway across metro are*a, CPR News (Jan. 28, 2025), https://perma.cc/P88H-B3JK.  The Warrant Materials sought here would provide the public with much needed context regarding the reasons behind these raids, including what ICE and other federal government agencies, including the Drug Enforcement Administration (DEA) and the Federal Bureau of Investigation (FBI), seek as a part of these raids.  The public's right of access may only "be overcome where countervailing interests heavily outweigh the public interests in access," *United States v. Pickard*, 733 F.3d 1297, 1302 (10th Cir. 2013) (citation omitted), but no such interests have or can be identified here.  The warrants have been executed and, to CPR's knowledge, no criminal investigation or immigration proceeding is underway or remains pending, nor has any party requested sealing in a publicly accessible manner.  Accordingly, the Warrant Materials should be unsealed.

**JURISDICTION**

CPR has standing for the limited purpose of seeking access to the Warrant Materials. Courts have long recognized that members of the public, including members of the press, "must be given an opportunity to be heard on the question of their exclusion [from judicial proceedings]." *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 609 n.25 (1982) (citation omitted).  And the Tenth Circuit has expressly held that a news organization has standing to challenge a court order that "impede[s] its ability to gather news" because such an "impediment is within the zone

2

of interest sought to be protected by the first amendment." *J. Publ'g Co. v. Mechem*, 801 F.2d 1233, 1235 (10th Cir. 1986) (holding that a newspaper had standing to challenge gag order prohibiting communications with former jurors). Here, because the continued sealing of the Warrant Materials is impeding CPR's newsgathering efforts, and an order unsealing those judicial records will remove that impediment, CPR has standing to seek such an unsealing order.

The Tenth Circuit has indicated that a petition for writ of mandamus pursuant to 28 U.S.C. § 1361 is the proper procedural mechanism to challenge a court order sealing court documents in a criminal proceeding. *See United States v. McVeigh*, 119 F.3d 806, 810 (10th Cir. 1997). Pursuant to 28 U.S.C. § 1361, district courts have original jurisdiction "of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

In the alternative, both the Tenth Circuit and courts in this district have suggested that intervention is a proper procedural mechanism for members of the press to challenge sealing or other orders that impede their ability to gather news. *See United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990) (recognizing "the correct procedure for a nonparty to challenge a protective order is through intervention for that purpose"); *Daines v. Harrison*, 838 F. Supp. 1406, 1408 (D. Colo. 1993) (holding that newspaper had standing to intervene in civil matter to challenge order requiring confidentiality of a settlement); *see also In re Petition for Writ of Mandamus of L.A. Times Commc'ns LLC*, No. 21-CV-1508 (D. Colo. 2021).

## STATEMENT OF FACTS

On or around January 26, 2025, federal law enforcement agents conducted a raid at a makeshift nightclub located at the 6600 block of Federal Boulevard in Denver, Colorado. *See* Molly Cruse, *Alleged Tren de Aragua members among 49 arrested in DEA raid*, Denverite (Jan.

3

27, 2025), https://perma.cc/R9KD-5NCE.  In a press release published the same day, the Rocky Mountain Field Division of the DEA indicated this raid was conducted pursuant to a search warrant issued in connection with an investigation into alleged drug trafficking by Venezuelan gang Tren de Aragua.  Press Release, *DEA Rocky Mountain Field Division Executes Search Warrant on Known Tren de Aragua Gang Location in Metro Denver*, Drug Enf't Admin. (Jan. 26, 2025), https://perma.cc/8XCG-BSG3.  The DEA indicated it had detained 49 people at the nightclub—41 of which were alleged to have been "in the United States illegally."  *Id.*  In a post on social media platform X, the DEA likewise indicated that the purpose of this operation was to "target[] drug trafficking & members of the Venezuelan gang Tren de Aragua," and that it seized drugs, weapons, and cash in the course of this operation, and took "[n]early 50 illegal aliens" into custody.  *See* @DEARockyMtnDiv, X (Jan. 26, 2025, 10:36 A.M.), https://perma.cc/NC7X-JQKA.  On January 27, however, a representative of the DEA indicated at a press conference that the agency was not likely to file any drug or gun charges in connection with the materials or persons seized.  Marissa Solomon et al., *DEA says Adams County raid likely won't result in drug charges*, 9News (Jan. 27, 2025), https://perma.cc/78FA-6RR8.  To date, no criminal charges, for drugs or otherwise, have been filed as a result of the January 26 raid.  Allison Sherry & Ben Markus, *Immigration raids in Colorado, both highly visible and cloaked in secrecy, rattle advocates and local authorities*, CPR News (Feb. 6, 2025), https://perma.cc/XWA7-A3NK (noting former Colorado U.S. Attorney Jason Dunn could not "remember ever charging people federally simply for being in the country without authorization").

On or around February 5, 2025, federal law enforcement agents conducted additional raids, this time at two apartment complexes located at 1218 Dallas St., Aurora, CO 80010, and 840 S. Oneida St., Denver, CO 80224.  *See* Kevin Beaty & Kyle Harris, *ICE and federal agents raid*

4

*multiple metro Denver apartments early Wednesday*, Denverite (Feb. 5, 2025), https://perma.cc/W3F4-J6XA. That morning, in a post on social media platform X, the Rocky Mountain DEA indicated that operations were "taking place throughout the metro area" that morning in connection with a "search warrant in support of @DHSgov." @DEARockyMtnDiv, X (Feb. 5, 2025, 9:04 A.M.), https://perma.cc/SXJ7-94EX. In another post, the Denver office of ICE indicated that the purpose of these operations was to target "100+ members" of Tren de Aragua. *See* @ERODenver, X (Feb. 5, 2025, 11:15 A.M.), https://perma.cc/QTC4-UAPV. It is unclear how many individuals, if any, were taken into custody as a result of the February 5 raids, and whether any criminal charges will be filed as of the date of this Petition. *See* Sherry & Markus, *supra* (noting reports that approximately 30 people were detained but that "no official tally of those taken into custody was given" and indicating that federal officials "wouldn't answer questions about how many warrants were signed by judges or whether any federal criminal charges might be lodged"); *see also* Kevin Beaty, *What we saw from inside ICE's raid at Aurora's Edge apartments*, Denverite (Feb. 6, 2025), https://perma.cc/ASW7-Z9F5 (noting no one had been detained in Aurora but that it was "unclear how many people may have been arrested elsewhere").

Prior to filing this Petition, CPR made a number of informal requests to access the Warrant Materials. After receiving information that one or more of these warrants may have been assigned Case No. 25-SW-0017-NRN, CPR reporter Allison Sherry requested access to the above-described warrant materials via email to Judge N. Reid Neureiter's chambers on February 12, 2025, but was told that to access the materials she requested, she would be required to file a motion. *See* Declaration of Allison Sherry ¶ 7. Also on February 12, 2025, CPR obtained the warrant for 840 S. Oneida St. in Denver from a source who was on the scene, signed by Judge Timothy P. O'Hara on February 3, 2025, but the document does not include the relevant court docket number.

5

*Id*. ¶ 8. Ex. B. In a February 14, 2025 email from the Clerk of Court, Ms. Sherry was again informed that she would need to file a motion to unseal warrant materials related to the search of 840 S. Oneida St., Apt. 210, Denver, CO. *Id.* ¶ 9 Ex. C.

## ARGUMENT

### I. Local Criminal Rule 47.1 requires release of the Warrant Materials.

When a search warrant has been executed and returned, this District's local rules provide the public a presumptive right to access any filings related to that warrant. Specifically, Local Criminal Rule 47.1 provides that "[u]nless restricted by statute, rule of criminal procedure, or order, the public shall have access to all cases and documents filed with the court and all court proceedings." D.C. Colo. LCrR 47.1(a). This right of access may only be restricted if someone files "a motion to restrict," which itself must be "open to public inspection" unless otherwise ordered. *See id.* LCrR 47.1(c). Local Rule 47.1 further requires that notice of any motions to restrict be provided to the public so that they may file any objections thereto. *Id.* LCrR 47.1(d). While a temporary restriction applies to docket sheets for ***unexecuted*** warrants and their supporting documents, that restriction expires "on the execution of the summonses or warrants." *Id.* LCrR 47.1(g)(1). Thus, the temporary restriction on warrant materials created by Local Rule 47.1(g) automatically expires when a warrant return and inventory is filed. In this manner, the rule is self-executing, as officers are required by the Federal Rules of Criminal Procedure to file such returns "promptly" after executing a warrant. *See* Fed. R. Crim. P. 41(f)(D).

It is no secret that the warrants at issue here were executed over a month ago and, therefore, the presumptive restriction on access under Local Rule 47.1(g) has expired. Indeed, the raids executing the subject warrants were widely reported by the press and were publicized by the DEA and ICE themselves in social media posts, *see supra* pp. 4–5. To Colorado Public Radio's

6

knowledge, there has been no motion or order restricting public access, or at least none that have been made publicly available as required under Local Rule 47.1(c) and (d).[1] Because no applicable statute, rule, or publicly available sealing order restricts access to the Warrant Materials, they should be unsealed pursuant to Local Rule 47.1(a).  *Cf. In re Demetriades*, 58 F.4th 37, 47 (2d Cir. 2023) (noting that where no party filed a formal motion to seal under relevant local rules, there was no basis for continued sealing).

### II. The Warrant Materials are judicial records presumptively open to the public under common law.

Even if any party has sought to restrict public access to the Warrant Materials beyond what Local Rule 47.1(g) contemplates, the Warrant Materials should be unsealed pursuant to the common law right of access to judicial records.  Courts have long recognized the public's "right to inspect and copy public records and documents, including judicial records and documents" under the common law.  *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978); *see also Pickard*, 733 F.3d at 1302; *Keymark Enters., LLC v. V.P.T., Inc.*, No. 08-cv-00662, 2008 WL 1801186, at *1 (D. Colo. Apr. 18, 2008) (recognizing the common law right of access and noting that "[o]nly in the rarest of cases is the sealing of documents appropriate").  As the Tenth Circuit has observed, this common law right "is an important aspect of the overriding concern with

---

[1]   CPR has searched for motions restricting access by searching in PACER for any docket activity in search warrant cases from January 25, 2025 to March 10, 2025, and the resulting report is attached hereto as **Exhibit 1.**  This search yielded dockets titled *Sealed v. Sealed* with no information about underlying docket entries.  If any motion to restrict access has been filed with respect to the relevant Warrant Materials, CPR requests that those motions be unsealed and, as explained *infra*, objects to the wholesale sealing of the docket sheets, which are themselves judicial records subject to public access.

7

preserving the integrity of the law enforcement and judicial processes." *United States v. Hickey*, 767 F.2d 705, 708 (10th Cir. 1985).

The Tenth Circuit—like other federal courts around the country—has held that a search warrant affidavit is a judicial record subject to the qualified common law right of access. *See Search of 1638 E. 2nd St.*, 993 F.2d at 775 (agreeing that "the press and the public have a common law qualified right of access to judicial records, . . . and that affidavits for search warrants are judicial records" (citation and internal quotation marks omitted)). There is virtually universal consensus that the common law presumption of access attaches to warrant materials post-execution, whether or not a charging decision has been made. *See Balt. Sun Co. v. Goetz*, 886 F.2d 60, 65–66 (4th Cir. 1989) (finding common law right of access attached to warrant materials pre-indictment); *United States v. Sealed Search Warrants*, 868 F.3d 385, 396 (5th Cir. 2017) (same); *In re EyeCare Physicians of Am.*, 100 F.3d 514, 517 (7th Cir. 1996) (same); *In re L.A. Times Commc'ns LLC*, 28 F.4th 292, 297 (D.C. Cir. 2022) (same); *see also In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 575 (8th Cir. 1988) (finding First Amendment right of access attached to search warrant materials pre-indictment). And courts are unanimous that—at a minimum—the common law presumption of access attaches after an investigation has closed, including by declining to pursue criminal charges. *See In re Newsday, Inc.*, 895 F.2d 74, 79 (2d Cir. 1990) (common law right of access attached to search warrant application following plea agreement); *United States v. Bus. of Custer Battlefield Museum & Store*, 658 F.3d 1188, 1190–91 (9th Cir. 2011) (common law right of access attached to search warrant applications after government declined to prosecute). The warrants at issue here have been

8

executed, and no criminal charges have been filed. Thus, the Warrant Materials are subject to the qualified common law right of access.[2]

Docket sheets are likewise judicial records to which the common law right—and likely the First Amendment right—of access applies. The Tenth Circuit has acknowledged that "dockets are public records" that as a matter of historical practice were "expected to remain open for public viewing and copying." *United States v. Mendoza*, 698 F.3d 1303, 1306–07 (10th Cir. 2012) (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 95 (2d Cir. 2004)) (holding that the public has a qualified First Amendment right to inspect docket sheets). Thus, docket sheets must typically be made public, whether or not the underlying filings are to be kept under seal. *See id.* at 1308–09 (noting that docket entries should ordinarily be made available even if underlying judgment would not be subject to public access); *see also Goetz*, 886 F.2d at 65 ("If the content of the [warrant] papers should not be disclosed, they should be placed under seal and docketed."); *Gunn*, 855 F.2d at 575 (ordering docket sheets for search warrant matter unsealed, even while affirming sealing of underlying material).

### III. No countervailing interests overcome the common law right of access to the Warrant Materials.

The common law right of access may only be overcome where "countervailing interests heavily outweigh the public interests in access." *Pickard*, 733 F.3d at 1302 (citation omitted). And

---

[2] Given the clarity of the relevant case law establishing that the common law presumption of public access applies to the Warrant Materials, the Court need not reach the separate question of whether the qualified First Amendment right of access also applies to these records. *See McVeigh*, 119 F.3d at 811–12 (assuming, without deciding, that the First Amendment right of access applies to judicial documents); *United States v. Gonzales*, 150 F.3d 1246, 1256 (10th Cir. 1998) (same). However, as other circuits have recognized, the First Amendment right of access would also apply to the Warrant Materials. *See Gunn*, 855 F.2d at 575; *In re N.Y. Times Co.*, 585 F. Supp. 2d 83, 92 (D.D.C. 2008) (recognizing both First Amendment and common law rights of access to warrant materials).

"[t]he party seeking to overcome the presumption of public access to the documents bears the burden of showing some significant interest that outweighs the presumption." *Id.* (citation omitted). Further, a party seeking sealing must demonstrate that "selectively redacting" sensitive information from the records at issue would not adequately protect the interest it seeks to protect by sealing. *Id.* at 1304. As explained *supra*, CPR is not aware of any publicly filed motion to seal the Warrant Materials. And because the docket sheets are themselves sealed and multiple agencies executed the relevant warrants, CPR is not able to identify the agency who may have filed the warrant affidavits, much less any person or entity who might object to unsealing. If there is no such party, the Warrant Materials may be unsealed. In the alternative, any party who previously requested continued sealing may be ordered to respond to this Petition "to articulate a sufficiently significant interest that will justify continuing to override the presumption of public access." *See id.* at 1302–03 (explaining "the party seeking to keep records sealed bears the burden of justifying that secrecy, even where . . . the district court already previously determined that those documents should be sealed"); *see also Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1181 (9th Cir. 2006) (explaining proponent of continued sealing bears the burden of identifying the "interests favoring continued secrecy," even for previously sealed documents).

Regardless, no countervailing interest in secrecy justifies the continued sealing of the Warrant Materials. The warrants have been executed and widely reported on, by the media and by the agencies who executed them. No indictments appear to be forthcoming. With respect to the warrant relating to the 6600 block of Federal Boulevard, law enforcement officials have already indicated that no drug charges are likely to be filed. Solomon et al., *supra*. To the extent the remaining warrants concern minor immigration crimes, federal charges for such crimes are rare. *See* Sherry & Markus, *supra* (noting former Colorado U.S. Attorney Jason Dunn could not

10

"remember ever charging people federally simply for being in the country without authorization"). Indeed, no federal charges have been filed with respect to the three raids at issue, despite the arrests having been effectuated a month ago. *See id.* And, in any event, cases involving immigration violations are not routinely kept under seal in this District where an arrest has already been effectuated. *See, e.g.*, *United States v. Castillo-Pina*, No. 1:25-mj-00015 (D. Colo. Jan. 27, 2025), ECF Nos. 1–1-1 (warrant and affidavit publicly available for alleged violation of 18 U.S.C. § 751(a) arising from escape from ICE custody). That the warrants have already been executed, arrests have already been effectuated, and the government has apparently declined to pursue any criminal charges in relation to the execution of the warrants at issue are all factors weighing heavily in favor of disclosing the Warrant Materials. *See, e.g.*, *Custer Battlefield Museum & Store*, 658 F.3d at 1194 (recognizing that even where the government has an interest in avoiding disclosure of warrant materials, those interests are typically "not as relevant once an investigation has been terminated," including by declining to prosecute).

Moreover, the public has a powerful interest in transparency in these cases. "Public access to warrant materials serves as a check on the judiciary because the public can ensure that judges are not merely serving as a rubber stamp for the police." *In re N.Y. Times Co.*, 585 F. Supp. 2d at 90. Access to the Warrant Materials would enable the public to evaluate whether the warrants were issued and executed in compliance with the Fourth Amendment, and whether observed and reported federal law enforcement activity exceeded the scope of the activities authorized by the underlying warrants. Without access to the Warrant Materials, it is unclear why the execution of a search warrant to seize evidence related to drug trafficking would not result in drug trafficking charges, but in detentions of persons accused of being undocumented—which is typically a civil administrative rather than criminal matter. *Compare* 8 U.S.C. § 1227, *with* 8 U.S.C. §§ 1325–

11

1326.  It is likewise unclear whether the scope of the warrants issued in connection with three raids on apartment complexes permitted ICE agents to knock on residents' doors to ask about their immigration status—which is reportedly what occurred.  *See* Beaty & Harris, *supra*.  In any case, public access to the Warrant Materials would permit the public to more fully understand the nature, scope, and objectives of the three raids.  Given the strong common law presumption in favor of access to the Warrant Materials, these judicial records should be unsealed.

## CONCLUSION

For the foregoing reasons, CPR respectfully requests that the Court grant its Petition and enter an order directing the Clerk of the Court to unseal and place on the public docket the Warrant Materials.

Dated: March 20, 2025                                    Respectfully submitted,

*/s/ Rachael Johnson*
Rachael Johnson
REPORTERS COMMITTEE FOR
 FREEDOM OF THE PRESS
c/o Colorado News Collaborative
2101 Arapahoe Street
Denver, CO 80205
Telephone: 970-486-1085
Facsimile: 202-795-9310
rjohnson@rcfp.org

*Counsel for Public Broadcasting of Colorado, Inc.,* d/b/a *Colorado Public Radio*

12