**EXHIBIT 2**

**REDACTED VERSIONS OF DOC. 1 AND DOC. 5 IN:**

**Case No. 25-sw-0117**

# UNITED STATES DISTRICT COURT

for the
District of Colorado

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>6600 Federal Boulevard Denver, Colorado 80221,<br>more fully described in Attachment A | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 25-sw-00117-NRN |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, ▮▮▮▮▮▮, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE "ATTACHMENT A"**, which is attached to and incorporated in this Application and Affidavit

located in the <u>State and</u> District of <u>Colorado</u>, there is now concealed *(identify the person or describe the property to be seized)*:

**SEE "ATTACHMENT B"**, which is attached to and incorporated in this Application and Affidavit

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841 | Distribution and Possession with Intent to Distribute a Controlled Substance |

The application is based on these facts:

- ☒ Continued on the attached affidavit, which is incorporated by reference.
- ☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under
  18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
SA ▮▮▮▮▮▮
*Applicant's signature*

SA ▮▮▮▮▮▮▮▮▮▮
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: __01/24/2025__

_____
*Judge's signature*

City and state: __Denver, CO__

N. Reid Neureiter
United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A

*Property to be searched*

The premises to be searched is located at 6600 Federal Boulevard, Denver, Colorado 80221.  This location is a one-story business with a basement. The building is a gray  with a white door on the front. The side of the business has a plastic gate which is used to allow vehicles to the back of the business. The rear of the business has a wooden deck. This deck and the back door is the main door used by all persons entering or leaving the club.  The premises is a warehouse style building with two bars within the building.

The premises is pictured below:



## ATTACHMENT B

### *Particular things to be seized*

Any items that are evidence, fruits and instrumentalities of violations of: 21 U.S.C. § 841, Distribution and Possession with Intent to Distribute a Controlled Substance) (the "Subject Offense"). Documentary evidence (as further described herein) will be seized only if such documents facially constitute evidence of the Subject Offense, or if they are pertinent to investigative time period of May 1, 2024, through the present.

1. Illegal drugs including, but not limited to, methamphetamine, cocaine, MDMA, LSD, and fentanyl pills. Items to be seized also include paraphernalia commonly associated with the use, packaging for sale or transportation of narcotics consisting in part of and including, but not limited to: paper and plastic bindles, plastic bags and/or baggies, labels, scales and other weighing devices, measuring devices, pipes, and containers commonly associated with the storage and use of controlled substances.

2. Any documents related to or used to assist in the procurement or distribution of controlled substances, including notes, customer lists, supplier lists, correspondence, and ledgers.

3. Cash, currency, jewelry, financial instruments, and/or records relating to the laundering, secreting, and/or distribution of monies related to the proceeds of procuring or distributing controlled substances, and any and all financial documents and records which may be evidence of financial transactions relating to obtaining, transferring, laundering, secreting, or spending the proceeds of the sale of controlled substances.

4. Photographs showing controlled substances or firearms and people in possession of controlled substances or firearms.

5. Cash counting devices.

6. Weapons, firearms, ammunition, and related accessories as well as other destructive devices which may be used to provide protection of the narcotics trafficking operation, its members and/or assets.

7. Investigators are authorized to document the areas to be searched with photographs and video recordings.

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, ████████, being duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a warrant to search the premises known as **6600 Federal Boulevard Denver, Colorado 80221**, hereinafter "PREMISES," further described in Attachment A, for the things described in Attachment B.

2.      Your affiant, Special Agent (SA) ████████, is an "investigative or law enforcement officer" within the meaning of Title 18, United States Code, Section 2510(7), and is authorized by law to conduct investigations, and make arrests for offenses enumerated in Title 18, United States Code, section 2516.

3.       I am a Special Agent with the Drug Enforcement Administration (DEA), and have been since ████████. I am presently assigned to the Rocky Mountain Field Division in Enforcement Group 2. I successfully completed the Basic Agent Training Academy at Quantico in Quantico, Virginia in ████████. This training included instruction in narcotics identification, detection, trafficking, and interdiction; money laundering techniques; asset identification, seizure, and forfeiture; and techniques used by narcotics traffickers to avoid detection by law enforcement officials. I was previously temporarily stationed in Tampa, Florida for approximately three months in a High Intensity Drug Trafficking Area (HIDTA) Group. Prior to that, I was a Deputy Sheriff with the Pasco County Sheriff's Office in Florida for approximately two years. As a Deputy Sheriff, I was a member of a proactive unit to conduct criminal interdiction to curb street crib. I worked various criminal investigations on a day-to-day

1

basis and brought cases to federal prosecutors involving prolific criminals. I assisted in gathering intelligence on the street regarding narcotics trafficking for VICE detectives. I was promoted to the VICE unit as a narcotics detective prior to my departure. Prior to that, I was a Sergeant in the United States Army working a Military Police Officer (MP) and Military Police Investigator (MPI) for approximately four and a half years.

4.     During my tenure as a DEA Special Agent, I have received specialized training in the Controlled Substances Act, including but not limited to, Title 21, United States Code, Sections 841(a)(1) and 846 (Possession and Distribution of Controlled Substances and Conspiracy to commit the same) and Title 18, United States Code, Sections 1956 et. Seq. (Money Laundering). I have received training in national and international drug smuggling investigations. I have received training in the identification of an investigation into criminal organizations engaged in conspiracies to manufacture and/or possess with the intent to distribute controlled substances. I have completed the DEA pipeline narcotics interdiction course and the money laundering criminal investigations related to narcotics course. I have completed undercover narcotics purchase training and covert surveillance training through Quantico at the DEA Academy. Throughout my seven years in law enforcement, I have encountered and seized a large variety of street narcotics in various states and internationally while working in the United States Army. I have investigated and arrested drug users, retail dealers, and drug traffickers operating at different levels within the drug trafficking networks. I have conducted countless buy/walks and buy/busts through the DEA, local agencies, and in the United States Army. I have learned through countless interviews street slang and intelligence related to narcotics trade craft. I was taught at Quantico and continue to learn daily through DEA intelligence the most relevant

2

narcotics trade craft relevant to today's drug trafficking networks. I have completed the Clandestine Laboratory training regarding the domestic manufacture of various narcotics. In addition, during my seven years of service, I have participated in numerous conversations with other experience agents and law enforcement personal in the indication of methods employed by individuals engaged in narcotics manufacturing, transportation, use, and money laundering.

5.　　I have investigated drug trafficking organizations involved in violating various federal laws, including, but not limited to, unlawful importation of controlled substances; the distribution of controlled substances, including cocaine, methamphetamine, heroin, and other dangerous drugs; as well as money laundering. I have participated in investigations of unlawful drug trafficking and money laundering and, among other things, have conducted or participated in surveillance; execution of search warrants; debriefings of informants; reviewing of taped conversations and drug records. My duties as a DEA Special Agent include the development and evaluation of information to detect criminal organizations engaged in the illegal manufacture and/or distribution of controlled substances in the United States, as well as identification of the proceeds of such illegal conduct and the laundering of the proceeds. As a DEA Agent, I have participated in narcotics investigations and in the execution of narcotics search warrants. I have performed surveillance to include observing and recording the movements of persons trafficking in drugs and those suspected in trafficking drugs. Through experience gained in investigations, my training, and conversations with other more experienced agents and law enforcement personnel, I have become familiar with methods used by traffickers to smuggle, safeguard, and distribute narcotics, to collect and launder related proceeds, and to communicate about drug activity.

3

6. The facts in this affidavit come from my personal observations and participation in this investigation, information from other law enforcement officers, my training and experience, and the training and experience of other law enforcement officers with whom I have consulted on this investigation.

7. This affidavit is intended to show only that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter

## **PROBABLE CAUSE**

8. The Rocky Mountain Field Division DEA began an investigation into an individual known as ████████████████████ in May of 2024. A DEA Confidential Source (CS) began reporting on ███████████████ and his criminal network to Special Agent (SA)████████████. SA ███ is the handler of this DEA CS. This CS has been working for DEA for approximately two and a half years. This CS has provided information which has led to the execution of multiple search warrants, arrests of drug traffickers and drug distributors; and the seizure of various amounts of cocaine, fentanyl, crystal methamphetamine, and other narcotics. This CS has not provided any untruthful information that your affiant is aware of.

### ***After Hours Club***

9. In May 2024, the CS began hanging out at a club located at **3898 Morrison Road Denver, CO 80219** hereinafter referred to as "***After Hours.***" This CS immediately noticed a large consumption and sale of narcotics inside of After Hours. The CS also noticed prostitution, , and various known criminals in the Denver Metropolitan area frequented the After Hours club. This CS began working for ██████████████ inside of After Hours.

10.     In July of 2024, the CS began reporting a shift in patrons inside of After Hours. The CS noticed a large influx of illegal aliens from Venezuela inside of After Hours. After Hours was controlled by Mexican nationals, whom the CS also reported were controlling the sales of narcotics inside the club.   Quickly after the suspected Venezuelan nationals began arriving, the CS began noticing various altercations inside of After Hours. The CS reported it appeared that the Venezuelans were attempting to take control of the criminal network, and drug trafficking, that occurred within and attached to After Hours. The CS reported various shootings occurring directly outside of After Hours. The CS reported these shootings were over disputes related to narcotics sales occurring at After Hours. The CS then began noticing an influx of Venezuelans wearing all red, black, and Nike Jordan clothing. The CS began to suspect that these individuals were members of the Venezuelan prison gang, Tren de Aragua or "TdA" based on their statements and apparent gang affiliation. Your affiant knows TDA gang members will commonly wear red, black and Nike Jordan clothing.



(Screenshots of a video provided by the CS depicting TDA gang members meeting. The video also depicts suspected illegal aliens operating as armed security guards wearing body armor)

11.     In August of 2024, the CS met a male and a female who arrived at After Hours. The CS recognized the female from a viral video of a robbery associated with the TdA gang that had been released on national news. This video depicted various suspected TDA gang members carrying firearms conducting a home invasion of an apartment The female informed the CS her name was "Janet" and provided the CS with her Facebook account. The CS reported they were hanging out with various males and females associated to TDA in After Hours. These TDA gang members began admitting to conducting various home invasion robberies, including the one that was depicted on the news.



(Aforementioned photograph of the home invasion and a screenshot of the Facebook account provided by "Janet")

12.　　In June of 2024, the Denver Police Department (DPD) began reporting several unlawful discharge cases which were being identified on a shot spotter near After Hours.

### *Initial surveillance of "After Hours"*

13.　　On August 31, 2024, the CS provided a video of the inside of After Hours wherein a plastic bag filled with a white powdery substance is located on a table near alcoholic bottles. The CS reported the plastic baggie contained cocaine.



(Aforementioned screenshot of the video depicting a cocaine baggie on the counter)

14.     On October 4, 2024, investigators conducted surveillance of After Hours and observed a red Jeep Grand Cherokee with a Texas tag arrive at the business two (2) different times. The vehicle dropped off multiple Hispanic females both times it arrived. The vehicle then circled the neighborhood a few times before driving away at a high rate of speed. Investigators also observed a Cadillac Escalade arrive on scene and conduct similar behaviors dropping off various Hispanic females. Throughout their surveillance, investigators saw various high-end vehicles pull up to the business. Security guards would move cones and allow the high-end vehicles to park directly in front of the business. Investigators noticed these vehicles were treated differently than other patrons and appeared to be VIP's. Investigators then saw multiple lower-end vehicles arrive. These vehicles were normally occupied by at least four (4) Hispanic males. These vehicles were required to park on the street. The security would usher these groups of males into the business. Security appeared to yell at anyone hanging outside of the business.

8

15.     At one point, a marked Denver Police Department patrol vehicle drove past the business, prompting everyone outside of the business to run inside of the business. Investigators also observed an individual identified and known to investigators as Alfonso TORRES-VELA arrive in a silver Honda Civic. TORRES-VELA appeared to be selling narcotics at After Hours. Investigators have previously observed TORRES-VELA multiple times at Karely's bar located at 377 Federal Blvd, Denver, CO 80219. TORRES-VELA has previously been identified as a retail dealer selling ounces of cocaine and crystal methamphetamine at Karely's bar. Your affiant knows DEA has conducted controlled purchases with TORRES-VELA and that he is a known narcotics distributor.

16.     Investigators then observed ███████████ arrive at After Hours in a newer Hyundai Crossover bearing an unknown CO temporary tag which appeared to be fictious. The CS has previously attempted to purchase kilogram quantities of cocaine from ███████. The CS advised ███████ is a validated TDA gang member who has conducted armed robberies with other TDA gang members. The CS reported ███████ is a cocaine distributor who sells inside of After Hours.

17.     Later that same evening, investigators attempted to conduct a traffic stop of ███████ when he left the business. Investigators had two (2) Denver Police Department marked patrol units attempt to traffic stop the vehicle. Upon seeing the marked DPD patrol units, ███████ drove away at a high rate of speed and investigators were not able to maintain surveillance on ███████. The CS moved from After Hours to Federal and reported ███████ arrived at 6600 Federal Boulevard Denver, CO 80221 after evading police.

9

▆▆▆▆▆ began laughing and bragging he outran the police. The CS reported

▆▆▆▆▆ had cocaine and a firearm and this is why he ran.

18.     On October 5, 2024, the CS also sent a video depicting cocaine powder left over inside of a cash register inside of After Hours. The CS reported the security guards working inside of After Hours are actively selling narcotics for ▆▆▆▆▆.



(Aforementioned screenshot of the video depicting cocaine powder left inside of the cash register)

19.     Investigators began conducting surveillance of After Hours in September of 2024 regularly. After Hours operated from 2:00 A.M. to 5:00 A.M.  Investigators observed ▆▆▆▆▆ to regularly  arrive at 1:50 A.M. in a black GMC bearing a CO ▆▆▆▆▆ tag:

10

▇▇▇▇. At approximately 2:00 A.M. various vehicles would arrive at After Hours. These vehicles contained various Hispanic males wearing body armor, firearms, and shirts which had "Security" written on them. ▇▇▇▇▇▇▇▇ would unlock After Hours with keys and security would begin placing traffic cones out. Just after 2:00 A.M., investigators would observe multiple vehicles arrive in a convoy fashion. It should be noted that investigators conducted surveillance multiple weekends in a row to corroborate what the CS observed. Investigators never saw After Hours open outside of the hours of 2 A.M. to 5 A.M. on a Friday, Saturday, or Sunday. Investigators observed the same pattern repeated over multiple weekends.



(Aforementioned photograph of ▇▇▇▇▇▇▇▇ After Hours)



(Aforementioned Surveillance of After Hours)

20.     On October 12, 2024, investigators observed a Hispanic male wearing a green jumpsuit arrive at After Hours. The male walked inside of After Hours and then shortly after walked outside. The male appeared to conduct a hand to hand transaction with a different Hispanic male wearing all black outside of After Hours. The male then appeared to talk with a female in a vehicle.



(Aforementioned surveillance of HENRIQUEZ-CHARAIMA)

21.     The male (buyer) and the female left After Hours and investigators followed them. Investigators observed the male and female appear to drive slowly through the neighborhood until they located a quiet place. DPD conducted a traffic stop of the vehicle for

12

investigators. Luis Alejandro HENRIQUEZ-CHARAIMA was identified as the male. Both

parties gave law enforcement verbal consent to search their vehicle. ███████ located a small

plastic baggie containing a pink powdery substance which he recognized to be "Tusi." Your

Affiant is aware that Tusi is a pink colored cocaine frequently manufactured by TdA members.

This substance is often a mixture of cocaine, methamphetamine and ketamine, dyed pink.

HENRIQUEZ-CHARAIMA was read his Miranda rights via a fluent Spanish speaker and

HENRIQUEZ-CHARAIMA willingly waived his rights willing to speak with law enforcement.

HENRIQUEZ-CHARAIMA provided the following statement which is a brief summary of the

conversation:

22.     HENRIQUEZ-CHARAIMA went to 3898 Morrison Road Denver, CO, or After

Hours,  to party. HENRIQUEZ-CHARAIMA advised "everyone" knows this is the place to

party and get narcotics. HENRIQUEZ-CHARAIMA has been to 3898 Morrison Road Denver,

CO 80219 twice (2) previously to purchase narcotics. HENRIQUEZ-CHARAIMA went into the

bathroom today and observed multiple Hispanic males sniffing cocaine in the bathroom. An

unknown Hispanic male was selling "dime baggies" or small, user-sized bags of narcotics,

containing a pink powdery substance for $30 a bag. The unknown Hispanic male told

HENRIQUEZ-CHARAIMA it was cocaine he was purchasing. HENRIQUEZ-CHARAIMA was

picked up by the female who was going to drive him home. HENRIQUEZ-CHARAIMA

informed investigators After Hours contains illegal aliens, and this is why investigators observed

so many Venezuelans coming out of the business.



(Photographs of the narcotics seized from HENRIQUEZ-CHARAIMA)

23.     In late October 2024, ███████████ reported to the CS he would be moving the enterprise from After Hours to 6600 Federal Boulevard Denver, CO 80221. ███████████ identified a pole camera hung on the street by DPD outside After Hours. ███████████ told the CS about the pole camera, the increased law enforcement presence, and the traffic stops of individuals leaving After Hours. ███████████ advised it was getting "too hot"" at After Hours and the enterprise would eventually be permanently moved to 6600 Federal Boulevard hereinafter referred to as "Federal". ███████████ then began inviting everyone from After Hours to leave and go to Federal at 5:00 A.M. to 8:00 A.M. Investigators followed dozes of patrons including ███████████ from After Hours to Federal. The party appeared to simply continue at Federal.

***Post Arrest Interviews***

24.     On October 25, 2024, investigators arrested ███████████ at his apartment. Investigators observed signs of sex trafficking inside of ███████████' apartment along with two females who appeared to being used for prostitution. ███████████ was taken into ICE custody where investigators conducted various lengthy interviews with him on multiple different days. ███████████ provided lots of verifiable information to law enforcement related

14

to TDA leadership, TDA gang activities, narcotics distribution, sex trafficking, and the listed
target crimes occurring at Federal and After Hours. ████████ was found to have tattoos
consistent with TDA on his body. ████████ denied being a validated TDA gang member,
but did provide lots of information on TDA activities. ████████ admitted to hanging out
with validated TDA gang members at Federal and After Hours. The following is a brief summary
of the interviews with ████████ .

25.     ████████ admitted to being a narcotics dealer and selling narcotics in After
Hours and Federal. ████████ confirmed Federal and After Hours are "open air drug
markets." ████████ advised there is sex trafficking and prostitution occurring in both
clubs. ████████ confirmed ████████ is in control of both clubs.

26.     Investigators have observed ████████ at After Hours and Federal.
████████ and ████████ have been seen together on social media posts at these clubs.
On October 22, 2024, investigators arrested ████████ outside of his apartment for
outstanding warrants. ████████ was taken into ICE custody where investigators conducted
various lengthy interviews with him on multiple different days. ████████ provided lots of
verifiable information to law enforcement related to TDA leadership, TDA gang activities,
narcotics distribution, sex trafficking, and the listed target crimes occurring at Federal and After
Hours. ████████ was found to have gang tattoo consistent with TDA on his body and
████████ admitted to being a part of TDA. ████████ admitted to ████████ being a
validated TDA gang member. The following information is a brief summary of the information
provided by ████████ .

27.     ████████ confirmed ████████ controls both Federal and After Hours. ████████ confirmed both clubs are "open air drug markets". ████████ confirmed the more popular club is Federal. ████████ can purchase fentanyl or cocaine inside of both clubs. ████████ advised he has met other TDA gang members inside of Federal.

### *Investigation into "Federal"*

28.     On November 3, 2024, the CS met a large narcotics distributor operating out After Hours and Federal. The narcotics distributor was identified as ████████. ████████ provided the CS a fentanyl sample of one blue l pill labeled M30, which your affiant knows to commonly contain pure or nearly pure fentanyl. ████████ provided the CS videos of the fentanyl pills he was willing to sell. ████████ informed the CS he would continue to sell user quantities at Federal, but would be willing to sell the CS a large quantity of narcotics. The CS advised ████████ was another drug dealer operating inside of Federal. ████████ among other drug dealers would arrive to sell narcotics. Security would let certain drug dealers into the club who were willing to pay a tax to ████████



(Aforementioned blue M30 fentanyl pill provided to the CS inside of Federal)

16

29.    On November 4, 2024, DEA executed a search warrant of ████████'s apartment which led to the seizure of 3 firearms, a money counter, 1 kilogram of heroin, user amounts of crystal methamphetamine and approximately 25,000 fentanyl pills.



(Aforementioned seizure from the execution of a search warrant on ████████'s residence)

### *Manufacturing of Tusi*

30.    In January, 2025, investigators began investigating a suspected TDA gang members who is working as a DJ. The DJ is known as Sosa DENNISON. In January 2025, DENNISON posted to social media of someone manufacturing Tusi, or pink cocaine commonly associated with TdA, on his kitchen stove. DENNISON then posted a photograph of a flyer depicting a party. This party was listed to occur at **9885 W Colfax Avenue** which is known to the CS as "**Glamour**". The CS knows the owners of Glamour as "Kiki" and "Lety". The CS knows them because ████████████ works with both Kiki and Lety. The CS advised the patrons regularly seen at Federal will go to Glamour or vice versa.

17

31.     On January 23, 2025, investigators observed the DJ changed the address for the party at Glamour on his social media.. The CS informed investigators after seeing the party flyer, this party is occurring at Federal. Investigators believe they are attempting to confuse law enforcement to ensure outsiders do not know the actual location of this party. Investigators believe this is occurring due to the recent traffic stop outside of Glamour. On January 23, 2025, the DEA CS confirmed Federal will be hosting parties on January 24 from 2:00 A.M. to 9:00 A.M. and then again on January 25 from 2:00 A.M. to 9:00 A.M. The DEA CS reported this will be a "Venezuelan party." The DEA CS reported there will be prostitution and drug sales inside of this party.



(Aforementioned party flyer, new party flyer, and a screenshot of the DJ manufacturing Tusi)

*Modus Operandi of Drug Traffickers*

32.     I have experience, training, and communication with other law enforcement personnel who specialize in the area of illegal drug trafficking and the detection and documentation of proceeds from drug trafficking. I also have experience in debriefing defendants and informants as witnesses who have personal knowledge of drug trafficking organizations. Such individuals often have personal knowledge regarding the methods, transportation, and distribution of the drugs and money in large scale-controlled substance distribution operations.

33.     I know, based on training and experience, as well as from information relayed to me during the course of my official duties:

    a.  A significant percentage of fentanyl, cocaine and methamphetamine imported into the United States, currently enters the United States domestic market at various points along the Southwest border of the United States, and is then transported to various cities throughout the United States for retail distribution. Furthermore, I know that the importation, transportation, and distribution of cocaine  are controlled by a number of well-organized and sophisticated drug trafficking organizations. I also know that drug trafficking organizations use couriers to transport drugs by vehicle from Mexico to various distribution centers in the United States; they use couriers to transport cash proceeds of drug sales from points of distribution in the United States back to Mexico, where the proceeds are laundered..

b.  When drug traffickers amass large quantities of cash from the sale of drugs, the
drug traffickers often attempt to legitimize these profits through the use of banks
and financial institutions and their attendant services that include accounts,
cashier's checks, money orders, wire transfers, and the like.  Based on training
and experience, I know that evidence of such financial instruments, accounts, and
other methods of "laundering" drug proceeds may be stored on digital devices,
such as cell phones and computers.  I further know that narcotics traffickers often
store electronic copies of records and receipts to such financial transactions on
digital devices, such as cell phones.  My colleagues and I have seen, for instance,
photographs of money orders, tracking numbers and cash.

c.  Drug traffickers take or cause to be taken photographs or videos of themselves,
their associates, their property, and their product; and that these traffickers often
maintain these electronic images stored on digital devices such as cell phones.
One purpose for doing so appears to be to show and confirm they are in
possession of the product they seek to distribute.

d.  Drug trafficking organizations maintain a variety of documents related to drug
trafficking, including ledgers, hotel receipts, wire transfer paperwork, apartment
rental agreements, cell phone bills, passports, photographs, credit card bills,
vehicle registration documents, vehicle rental receipts, utility bills, and other
documents that provide evidence of the illegal conduct of such organizations. I
further know that narcotics traffickers often store digital versions of such
documents in electronic devices such as cell phones.  My colleagues and I are also

20

aware that more and more commonly such records exist only in electronic form as people more generally move from paper to electronic records to conduct the daily affairs of their life.

## CONCLUSION

I submit that this affidavit supports probable cause for a warrant to search the PREMISES described in Attachment A and seize the items described in Attachment B. Your Affiant has requested permission to execute this warrant at any time of the day or night, given that the premises in question is opened after 1 A.M., with anticipated criminal activity occurring after 2 A.M.

## REQUEST FOR SEALING

34.     It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because the items and information to be seized are relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time. Based upon my training and experience, I have learned that online criminals actively search for criminal affidavits and search warrants via the Internet, and disseminate them to other online criminals as they deem

//

//

//

21

appropriate, i.e., post them publicly online through the carding forums. Premature
disclosure of the contents of this affidavit and related documents may have a significant
and negative impact on the continuing investigation and may severely jeopardize its
effectiveness.

Respectfully submitted,


-Special Agent
Drug Enforcement Administration

Submitted, attested to, and acknowledged by reliable electronic means on January ___24th__, 2025.

_N. Reid Neureiter_

HON. N. REID NEUREITER
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF COLORADO

**This Application and Affidavit was reviewed and submitted by Special Assistant United
States Attorney Leah Perczak.**

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Colorado

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )     Case No. 25-sw-00117-NRN
)
6600 Federal Boulevard Denver, Colorado )
80221, more fully described in Attachment A )
)

## SEARCH AND SEIZURE WARRANT

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the <u>State and</u> District of <u>Colorado</u> *(identify the person or describe the property to be searched and give its location)*:

**SEE "ATTACHMENT A"** attached hereto and incorporated by reference

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE "ATTACHMENT B"** attached hereto and incorporated by reference

**YOU ARE COMMANDED** to execute this warrant on or before <u>February 7, 2025</u> *(not to exceed 14 days)*

☐ in the daytime 6:00 a.m. to 10 p.m.    ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to

<u>N. Reid Neureiter</u>.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*.    ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: <u>01/24/2025, 4:37 pm</u>

_____
*Judge's signature*

City and state: <u>Denver, CO</u>

N. Reid Neureiter
<u>United States Magistrate Judge</u>
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.:<br>MK-25-0019 | Date and time warrant executed:<br>01/26/2025 @ 0500 | Copy of warrant and inventory left with:<br>At the property on the table |
| Inventory made in the presence of : ███████████████, | | |

Inventory of the property taken and name of any person(s) seized:

3 firearms
Cocaine
Crack cocaine
Tusi
1 cell phone
1 Bitcoin ATM
Various plastic
baggies

**FILED**
**UNITED STATES DISTRICT COURT**
**DENVER, COLORADO**
*12:23 pm, Feb 11, 2025*
**JEFFREY P. COLWELL, CLERK**

| **Certification** |
|---|

    I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date:    02/11/2025

Digitally signed by ███████
Date: 2025.02.11 11:21:53 -07'00'

*Executing officer's signature*

*Printed name and title*

<u>**ATTACHMENT A**</u>

*Property to be searched*

     The premises to be searched is located at 6600 Federal Boulevard, Denver, Colorado 80221.  This location is a one-story business with a basement. The building is a gray  with a white door on the front. The side of the business has a plastic gate which is used to allow vehicles to the back of the business. The rear of the business has a wooden deck. This deck and the back door is the main door used by all persons entering or leaving the club.  The premises is a warehouse style building with two bars within the building.

The premises is pictured below:



## ATTACHMENT B

### *Particular things to be seized*

Any items that are evidence, fruits and instrumentalities of violations of: 21 U.S.C. § 841, Distribution and Possession with Intent to Distribute a Controlled Substance) (the "Subject Offense"). Documentary evidence (as further described herein) will be seized only if such documents facially constitute evidence of the Subject Offense, or if they are pertinent to investigative time period of May 1, 2024, through the present.

8. Illegal drugs including, but not limited to, methamphetamine, cocaine, MDMA, LSD, and fentanyl pills. Items to be seized also include paraphernalia commonly associated with the use, packaging for sale or transportation of narcotics consisting in part of and including, but not limited to: paper and plastic bindles, plastic bags and/or baggies, labels, scales and other weighing devices, measuring devices, pipes, and containers commonly associated with the storage and use of controlled substances.

9. Any documents related to or used to assist in the procurement or distribution of controlled substances, including notes, customer lists, supplier lists, correspondence, and ledgers.

10. Cash, currency, jewelry, financial instruments, and/or records relating to the laundering, secreting, and/or distribution of monies related to the proceeds of procuring or distributing of controlled substances, and any and all financial documents and records which may be evidence of financial transactions relating to obtaining, transferring, laundering, secreting, or spending the proceeds of the sale of controlled substances.

11. Photographs showing controlled substances or firearms and people in possession of controlled substances or firearms.

12. Cash counting devices.

13. Weapons, firearms, ammunition, and related accessories as well as other destructive devices which may be used to provide protection of the narcotics trafficking operation, its members and/or assets.

14. Investigators are authorized to document the areas to be searched with photographs and video recordings.